did use violence toward the plaintiff which, unprovoked, would amount to cruel and inhuman treatment, yet she also used violence toward him, excited his jealousy, and helped to bring about these conditions.

Therefore I have decided that, while the defendant struck the plaintiff and used offensive language, yet I will refuse her a decree of separation because of her treatment of him. The complaint I do not dismiss, but refuse the relief asked, directing, however, that the defendant support his wife and child by proper allowance. This I believe to be within the power of the court under these circumstances, as decided in P. v. P., 24 How. Prac. 197; Turrel v. Turrel, 2 John. Ch. 391; Atwater v. Atwater, 53 Barb. 625; Douglas v. Douglas, 5 Hun, 140. The law as gathered from these cases appears to be that support may be awarded "when it shall appear that one or more of the causes of separation has been proven, but that, from the fact of condonation or other matter of defense, it would be improper for the court to decree or adjudge her such relief, and yet a judgment for support and maintenance might, in view of all the facts proven, be equitable and proper, * * * 'the fact or facts provided by the statutes being found to exist, separation may be decreed, with support, or a support without a decree of separation.'" Atwater v. Atwater, supra. In Douglas v. Douglas, at page 144, it was said, referring to the statutory causes of separation:

"If no such cause can be shown, then the courts under these provisions are without authority over the parties. But, if one or more of them are established by proof, then a separation, with a decree for the maintenance of the wife and her children, may be made in her favor. And the further power has been conferred of making the provision for her separate maintenance, even though a decree for separation may not be made. But it has not authorized a decree for a separate maintenance when the cause which might justify a separation has not been proved. It is only after it has been established, and the separation itself for some reason denied, that the power has been given to award a separate maintenance. Although in the prescribed cases one may be withheld, that, in and of itself, will not necessarily deprive the wife of the other."

Under the circumstances here shown and with the limitations of a cause proved, but a decree properly refused, the case of Davis v. Davis, 75 N. Y. 221, cannot hold to the contrary, as both the Atwater and Douglas Cases are cited with approval.

Judgment decreed in accordance herewith.

---

PAGE v. NORTHERN INS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 2, 1910.)

INSURANCE (§ 507*)—FIRE INSURANCE—CONSTRUCTION OF POLICY.

A fire policy insured a stock of goods against all direct damage by fire except as thereinafter provided, "to an amount not exceeding $1,500, * * * being this company's pro rata share of the agreed commissions or profits of assured, of not exceeding 15 per cent. on the sound value" of the merchandise. The policy also provided that, if the merchandise or any portion thereof should be destroyed or damaged by fire, the insurer

should be liable for a loss of commission or profits equal to not exceeding 15 per cent. of the damage which the goods should be found to have sustained, which damage should be the final cost to the companies covering the stock, irrespective of whether the stock was surrendered to the companies insuring it or not. *Held*, that the insurer's liability extended only to a percentage of profits on the difference between the total value of the goods insured and the amount received by insured as salvage on the damaged goods taken over by the insurance companies under the policies; the percentage profit being limited to a percentage on the amount of damages sustained by insured.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 507.*]

Appeal from Trial Term, New York County.

Action by Henry W. A. Page against the Northern Insurance Company of New York. There was a directed verdict for defendant, and plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

Ira Bliss Stewart (Dickinson W. Richards, on the brief), for appellant.

Frederic R. Coudert (John P. Murray, on the brief), for respondent.

LAUGHLIN, J. This is an action on an insurance policy which the plaintiff was doubtless led to believe would, in the event of the destruction of or damage to his goods by fire, indemnify him for the loss of profits that he would have derived on a sale of the goods but for the fire. It is first expressly provided in the policy that the company insures the plaintiff on his stock of goods against all direct loss or damage by fire except as thereinafter provided "to an amount not exceeding fifteen hundred dollars. * * * Being this company's pro rata share of the agreed commissions $^{and}/_{or}$ profits of assured, of not exceeding 15 per cent., on the sound value" of the merchandise to which the insurance relates. One would expect from this provision that it was the design of the company either alone or with other companies, if any, which had written or might write like insurance to insure the owner against loss of commissions or profits on the goods, and that the maximum liability should not exceed 15% of the value of the goods before the fire. The appellant insists that this was an absolute undertaking on the part of the company. If he had been allowed to recover on this theory, his damages would have been much greater.

The trial court was of opinion that this apparently absolute liability for insurance on profits was qualified and limited by a succeeding provision of the policy, which is as follows:

"If during the term of this policy said merchandise, or any portion thereof, shall be destroyed or damaged by fire, this company shall be liable for a loss of commissions $^{and}/_{or}$ profits equal to not exceeding 15 per cent. of the amount of damage which such goods shall be found to have sustained, which damage shall be the final cost to the companies covering the stock, irrespective entirely whether the stock is surrendered to the companies insuring the same or not."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It would seem from the provisions of this policy that it was understood, although it is not expressly stated, that the insured held insurance on the stock of goods as distinct from insurance on his profits; and it appears that such was the case. Pursuant to the provisions of the policies of insurance on the stock of goods, the damaged goods were surrendered to the insurance companies. The verdict was directed on the theory that the liability of the company was only with respect to a percentage of profits on the difference between the total value of the goods and the amount received by the insured as salvage on the damaged goods taken over by the insurance companies under the policies, or, in other words, the percentage of profits was limited to a percentage on the amount of the damages sustained by the insured. The sound value of the goods insured was found to be $42,785.40, and the loss or damage was found to be $17,521.70. The loss was adjusted by the insurance companies on that basis. If the fire had not occurred and the plaintiff had sold all of the goods insured in the due course of business, he would have received commissions or profits on the total sound value, but, on account of the damaged goods being taken over by the insurance companies, he is deprived of all opportunity of realizing any further profits thereon; and by the construction of the policy on which the verdict was directed his insurance, instead of being based on a percentage of profits figured on the value of the property, turns out to be insurance based on a percentage of profits figured on only about two-fifths of such value. If the companies had not taken over the stock, but had paid the damages and had left the damaged goods with the plaintiff, he might have obtained on selling them the contemplated profit to the extent that they were deemed to represent the sound value of the stock insured; but he could not have recovered any loss of profits with respect to them under this policy, and by the express terms of the provisions of the policy lastly quoted it appears that the same rule was to obtain irrespective of whether the owner was to be permitted to retain the damaged stock or the insurance companies took it over pursuant to the policies.

The provisions of this policy are quite misleading; but we are of opinion that they cannot all be given force and effect unless the provisions firstly quoted are deemed to be modified by the succeeding provisions by which the assured has in effect stipulated that the profits shall be figured, not on the total value of the goods destroyed or damaged, but on the loss or damage thereto which the insurance companies insuring the stock of goods shall pay or be liable to pay. This falls far short of being an insurance on profits on the total value of the merchandise destroyed or damaged by fire, and is, in effect, merely an insurance on a percentage of the profits on the total value to the amount of the damages which the insured is able to collect or recover from the insurance companies liable for insurance on the goods, and it becomes no insurance on the profits on the remainder thereof. Of course, any ambiguity in an insurance policy is to be resolved in favor of the insured, but the application of that rule does not aid the appellant; for, construing the policy in the light of all of its pro-

visions, the agreement which the company has made is, we think, as herein stated.

The court in directing the verdict followed this construction, which gives the plaintiff all the relief which can be awarded to him under this policy.

It follows, therefore, that the judgment should be affirmed with costs. All concur.